In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-4396

TANGO MUSIC, LLC,

*Plaintiff/Appellant,*

v.

DEADQUICK MUSIC, INC., *et al.,*

*Defendants/Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7331—**John F. Grady**, *Judge.*

ARGUED SEPTEMBER 30, 2003—DECIDED OCTOBER 23, 2003

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, Tango, appeals from the dismissal of its suit against DeadQuick and two individuals for failure to prosecute the suit. It is a diversity suit—and thereon hangs a tale. Tango is a limited liability company, and for diversity purposes the citizenship of such an entity is that of its members. *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir. 1998). One of its members is a citizen of New Jersey, another a citizen of the United Kingdom. The principal defendant, DeadQuick, is a citizen of Delaware and New York, but one of the individual

defendants is a citizen of the United Kingdom and the other a citizen of either the United Kingdom or Virginia. So while the U.S. parties are diverse, there are U.K. citizens on both sides of the case, and we must decide whether that destroys diversity jurisdiction.

We have held in previous cases that the presence of foreigners on both sides of a diversity case does not destroy diversity. *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 428 (7th Cir. 1993); *Dresser Industries, Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494 (3d Cir. 1997); *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985). But neither our court nor any other appellate court has decided whether it makes a difference if there are foreigners from the same country on both sides, though intimations that it does not can be found in *Dresser*, 106 F.3d at 500, and in *Karazanos v. Madison Two Associates*, 147 F.3d 624, 627 (7th Cir. 1998). All but one of the district court cases to address the question hold that it makes no difference. *Zenith Electronics Corp. v. Kimball Int'l Mfg., Inc.*, 114 F. Supp. 2d 764, 768-74 (N.D. Ill. 2000); *Bank of New York v. Bank of America*, 861 F. Supp. 225, 228-29 (S.D.N.Y. 1994); *Clark v. Yellow Freight System, Inc.*, 715 F. Supp. 1377, 1378 (E.D. Mich. 1989); *K&H Business Consultants Ltd. v. Cheltonian, Ltd.*, 567 F. Supp. 420, 422-24 (D.N.J. 1983). (The outlier is *De Wit v. KLM Royal Dutch Airlines, N.V.*, 570 F. Supp. 613, 617 (S.D.N.Y 1983).) We agree.

The Judicial Code confers federal jurisdiction over suits between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). That describes this case exactly. The statute does not say ". . . citizens or subjects of *different* foreign states," and we cannot think of a reason to depart in this instance from a literal reading. The reason that

complete diversity of citizenship is required in a suit that does not have any foreign parties is that the presence on opposite sides of the case of citizens of the same state tends to neutralize any bias that a local court may have in favor of a local resident; the fear of such bias is the most commonly expressed rationale for diversity jurisdiction, see *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 87 (1809) (Marshall, C.J.); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 991 (7th Cir. 2001); *Dragan v. Miller*, 679 F.2d 712, 714 (7th Cir. 1982); *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 1005 (9th Cir. 2001); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3601, pp. 337-38 (2d ed. 1987), though there is some question how important it really was in the thinking of the framers of the Constitution. See *id.* at 337-43; 15 James Wm. Moore, *Moore's Federal Practice* § 102App.03[1], pp. 4, 6 (3d ed. 2003); Henry J. Friendly, "The Historic Basis of Diversity Jurisdiction," 41 *Harv. L. Rev.* 483 (1928). The neutralization argument does not extend to the case in which a citizen of one state is suing a citizen of another and there are citizens of the same foreign state on both sides. Suppose that a citizen of Illinois sues a citizen of Indiana in an Illinois state court and the defendant wants to remove the case to federal court because he is afraid that an Illinois court will be biased in favor of the Illinois plaintiff. It would hardly be a comfort to him if there happened to be a French coplaintiff and a French codefendant, since their citizenship would not weigh with an Illinois court. To put this differently, it would make no difference to such a court whether both foreign parties were French or one was French and the other was Italian, in which event, as we know, diversity would be unaffected.

A reinforcing consideration is the desirability of promoting international harmony (a consideration emphasized by

Hamilton, in *Federalist No. 80,* in justification of the alienage jurisdiction; see also Kevin R. Johnson, "Why Alienage Jurisdiction? Historical Foundations and Modern Justifications for Federal Jurisdiction Over Disputes Involving Noncitizens," 21 *Yale J. Int'l L.* 1, 10-12 (1996)) by giving foreigners access to the national court system, where they are less likely to encounter provincial prejudices when litigating against U.S. citizens—as they are in this case, even though they are also litigating against their own conationals.

So there is jurisdiction and we proceed to the merits. Tango (actually a predecessor, but we'll suppress that irrelevant detail) had made a contract with DeadQuick whereby the latter licensed Tango to distribute recordings of the rock and roll star David Bowie. It turned out that DeadQuick did not own the right to distribute them and in 1999 Tango brought this suit, charging fraud. Months after filing the suit Tango hadn't served any defendant and the district judge ordered it to do so within 30 days. It dawdled for five months before serving anyone and though given an extension until March 2001 failed to serve two of the defendants by then. They were dismissed and the remaining defendants filed motions to dismiss to which Tango failed to file a timely response, missing repeated extensions and finally drawing a warning from the judge in August that "any failure in the future to pursue this action diligently will result in a dismissal for want of prosecution." Tango missed the next deadline set by the judge—to respond to the defendants' motion to dismiss Tango's third amended complaint—in March 2002. When telephone messages both from the defendants' lawyer and from the court went unanswered by Tango's lawyer, the judge in September carried out his threat and dismissed the case for want of prosecution.

Tango filed a motion for reconsideration in which its lawyer claimed that he had suffered severe depression that had prevented him from attending to his professional responsibilities. The district court denied the motion, and Tango, represented by a different lawyer, though from the law firm that had acquired the original lawyer's firm, appeals that denial.

The motion to reconsider was filed within the ten-day period for filing a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment, but Tango has consistently represented its motion to be a Rule 60(b) motion to vacate the judgment. That is a mistake, of course, since Rule 59(e) brings up the underlying judgment for review, here the judgment dismissing the suit, whereas an appeal from the denial of a Rule 60(b) motion merely brings up the order denying the motion, *Foman v. Davis*, 371 U.S. 178, 181 (1962); *Kunik v. Racine County*, 106 F.3d 168, 173 (7th Cir. 1997); *Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 525 n. 3 (1st Cir. 2002), and also since the grounds for relief under Rule 60(b) are more limited than those for relief under Rule 59(e). *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995); *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173-74 (5th Cir. 1990); cf. *Wharf v. Burlington Northern R.R.*, 60 F.3d 631, 637 (9th Cir. 1995). No matter; whatever the precise scope or standard of review, it is clear that the judge acted properly in dismissing the suit for failure to prosecute after clearly warning the plaintiff's counsel that a further neglect of deadlines would lead to that result. *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000) (per curiam); *In re Bluestein & Co.*, 68 F.3d 1022, 1026 (7th Cir. 1995) (per curiam); *Ball v. City of Chicago, supra,*

2 F.3d at 755; *Jackson v. City of New York*, 22 F.3d 71, 75-76 (2d Cir. 1994).

Tango's principal argument is that the lawyer's depression was a good excuse for his neglecting his responsibilities. We may assume that it was. But that is not the issue. The issue is whether *Tango* had a good excuse for failing to prosecute its case. It did not. It is a business firm, not a hapless individual, and it has to take responsibility for the actions of its agents, including the lawyers whom it hires. "If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good." *United States v. 8136 S. Dobson St.*, 125 F.3d 1076, 1084 (7th Cir. 1997); see also *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 397 (1993); *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962); *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003); *Gripe v. City of Enid*, 312 F.3d 1184, 1189 (10th Cir. 2002); *Community Dental Services v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). The *Modrowski* decision applied this principle in a case of a lawyer's medical incapacity, just as in this case.

If a party's lawyer is guilty of professional malpractice (and mental illness is not a defense to a tort suit, *Restatement (Second) of Torts* § 283C (1979)—certainly not in a case of professional malpractice, *Jones v. Chicago HMO Ltd.*, 730 N.E.2d 1119, 1130 (Ill. 2003)), the party has a remedy against him, but it should not be permitted to shift the burden of its agent's neglect to the district court and the defendants. *United States v. 7108 West Grand Ave.*, 15 F.3d 632, 633 (7th Cir. 1994); *Gripe v. City of Enid, supra*, 312 F.3d at 1189. Or so at least the district judge could decide without being thought to have abused his discretion, let alone his discretion squared: a district court's decision under Rule 60(b) not to reinstate a case dismissed for want of

prosecution is "discretion piled on discretion," *Brandon v. Chicago Board of Education*, 143 F.3d 293, 295 (7th Cir. 1998); *Dickerson v. Board of Education*, 32 F.3d 1114, 1117 (7th Cir. 1994); *Tolliver v. Northrup Corp.*, 786 F.2d 316, 319 (7th Cir. 1986), since, as these cases explain, the standard for appellate review of the dismissal of a suit for failure to prosecute is also abuse of discretion. See also *Aura Lamp & Lighting, Inc. v. International Trading Corp.*, 325 F.3d 903, 907 (7th Cir. 2003); *Pomales v. Celulares Telefónica, Inc.*, 342 F.3d 44, 48 (1st Cir. 2003); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002).

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*