# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1421

CYNTHIA EASLEY, Individually and
as Administrator of the Estate of
CHRISTOPHER B. EASLEY,

*Plaintiff-Appellant,*

v.

DAVID KIRMSEE, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 938—**Thomas J. Curran**, *Judge.*

———————

ARGUED NOVEMBER 7, 2003—DECIDED AUGUST 30, 2004

———————

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* Cynthia Easley appeals the
district court's denial of her motion under Fed. R. Civ. P.
60(b) to vacate its grant of summary judgment against her in
an action under 42 U.S.C. § 1983 against four Wisconsin
local governmental units and a number of their respective
police officers. We affirm.

### I. Background

A Geneva Township, Wisconsin, police officer, David Kirmsee, shot and killed Christopher Easley on October 26, 2000. The unfortunate incident occurred when Officer Kirmsee (and the other named defendant officers) responded to a call placed by Cynthia Easley asking for police help with her eighteen-year-old son, Christopher, whom Easley reported had just left her house brandishing a knife and bleeding profusely from self-inflicted knife wounds. Easley advised police that Christopher was both emotionally disturbed and intoxicated. Kirmsee and the other law enforcement officers who responded came upon Christopher, knife in hand, in the middle of a residential neighborhood. Kirmsee drew his weapon and attempted to convince Christopher to surrender, but the boy refused to drop the knife and instead raised the knife threateningly and advanced on Kirmsee. Initially Kirmsee attempted to retreat, but was forced to hold his ground when he discovered that he was on uneven and unfamiliar terrain, without a known route or path of escape. When Christopher continued to advance, and continued to ignore warnings to stop and drop the knife, Kirmsee fired his weapon at Christopher and hit him in the chest, fatally injuring him.

After a lengthy inquest, a jury finding absolved Kirmsee of wrongdoing in the shooting. The decedent's mother, Cynthia Easley, in spite of this finding, filed suit on behalf of herself and Christopher's estate on September 14, 2001, alleging that Kirmsee violated her son Christopher's Fourth Amendment right to be free from unreasonable seizures by use of excessive force in apprehending him, and also alleging that the remaining officer-defendants failed to intervene to prevent Kirmsee's alleged use of excessive force, and furthermore that the four defendant local governmental units failed to train their officers properly to apprehend the young man without the use of excessive force.

After the parties voluntarily exchanged initial discovery, the court held a scheduling conference on December 11, 2001, and announced its pretrial schedule. At the conference, both parties agreed that, because of the extensive jury inquest, resulting in a transcript of some thousand pages consisting of testimony as well as forensic materials relevant to the shooting incident, both parties had thus garnered much of the necessary information that would normally be received through discovery. With this in mind, the court ordered an abbreviated discovery schedule focusing on the disclosure of expert witnesses: Easley was ordered to disclose her experts by July 1, 2002, and the defendants were to disclose their experts by August 1, 2002. The court further designated August 15, 2002 as the deadline for filing dispositive motions and ordered that the discovery of all expert witnesses be completed by September 1, 2002, and that all remaining discovery be completed by December 1, 2002.

Easley's discovery schedule did not proceed as expeditiously as previously planned and agreed upon. After making her required initial disclosures, Easley did nothing further in relation to discovery until the court's July 1, 2002 deadline for disclosure of expert witnesses came and passed. The day after, on July 2, 2002, Easley moved to extend the deadline to August 15, 2002 for the disclosure of her experts. The court granted Easley's belated request, but only "*as to those experts not needed in connection with any anticipated dispositive motions to be filed on August 15, 2002.*" The court further ordered that its original scheduling order was to remain in full force and effect in all other respects.

The defendants complied and filed motions for summary judgment within the court-ordered due date, August 15, 2002. Easley also filed a brief (three-page) motion for summary judgment that same date, but her motion papers were barren of any argument—much less any proposed findings of

fact—in support of her Fourth Amendment claim.[1] On August 15 Easley also disclosed her expert, Dr. George Kirkham, but failed to include any report or statement of facts or any opinion by Dr. Kirkham with her disclosure as mandated in the court's scheduling order. Not surprisingly, on September 16, 2002, she moved for additional time to complete the discovery of expert witnesses so that the defendants could depose Dr. Kirkham. The court denied Easley's motion to reset the discovery schedule, but did allow her until October 1, 2002 to file Dr. Kirkham's report, and until October 7, 2002 to make the doctor available for a deposition. The court further ordered that all discovery of experts must be completed by November 15, 2002, and that *the court's original scheduling order was in all other respects to remain in full force and effect.*

Easley, however, never did file a response to the defendants' summary judgment motions (local rule mandated the response within thirty days), and on November 26, 2002 (more than two months after the response due date), the court granted summary judgment to the defendants. The court noted Easley's failure to file a response, adopted the defendants' findings of fact, and ruled on the merits of defendants' (unopposed) motions, holding that Easley failed to establish

---

[1] Easley's summary judgment motion was accompanied by a motion to amend her complaint and add a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Easley sought this amendment despite the fact that the district court had set forth in its scheduling order that all amendments to the pleadings should be made by January 15, 2002 (eight months before Easley filed this motion seeking to amend). Easley's contemporaneously-filed summary judgment motion addressed *only* this proposed amended claim, alleging that the defendants had violated the ADA by not having procedures in place to accommodate Christopher's alleged disability, "serious" "emotional problems." The district court denied Easley's motion to amend her complaint in a separate order dated October 2, 2002.

that Kirmsee's use of force was unreasonable, and, furthermore, that she also failed to prove that the four local government entities' officers were inadequately trained.

Easley filed a motion to reconsider on December 26, 2002, arguing that the court's grant of summary judgment to the defendants was improper because the parties had not completed discovery. Easley posited that, when the court granted extensions on discovery, it implicitly extended the date for responding to dispositive motions. Easley also attached to her motion transcripts of the jury inquest and transcripts of the expert depositions that the parties had taken after the deadline for filing dispositive motions had passed. Easley argued that the documents she submitted demonstrated disputed issues of fact that precluded the entry of summary judgment. Easley did in this instance partially support her arguments with citations, but only as to the jury inquest, and not as to the experts' depositions.

The court denied Easley's motion, ruling that she failed to present an adequate excuse for neglecting to file a response to the defendants' motions for summary judgment, nor any other grounds under Fed. R. Civ. P. 60 "to persuade the court" to reopen the case.[2] The court noted that all the arguments and evidence Easley cited in her motion for reconsideration "were available during the briefing period for the summary judgment motions." Easley appeals the district court's denial of her Rule 60(b) motion.[3]

---

[2] Easley filed her motion to reconsider more than ten days after the court entered final judgment against her, so the court correctly treated her post-judgment motion as one under Rule 60(b) instead of Rule 59(e). *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166-67 (7th Cir. 1995).

[3] Easley also asks us to review the court's grant of summary judgment. But this decision is not before us, as Easley failed to notice her appeal within thirty days of the entry of final judgment, *see*

(continued...)

### II. Analysis

On appeal, Easley raises a most novel argument. She argues that she was justified in failing to respond to the defendants' summary judgment motions because the court somehow led her attorney to believe that it had implicitly extended her response deadline in granting her motions for extensions of discovery. She contends that the court sent her mixed signals that justified her attorney's neglect in complying with the deadline mandated in the local rule dealing with the filing of responses to summary judgment motions.[4] She argues that, under these circumstances, summary judgment was improper and the court abused its discretion when it refused to grant her Rule 60(b) motion and vacate its summary judgment against her.

We evaluate a court's decision to deny relief under Rule 60(b) only for an abuse of discretion. *Castro v. Bd. of Educ.*, 214 F.3d 932, 934 (7th Cir. 2000). We agree that the trial judge correctly treated Easley's motion as one under Rule 60(b)(1), which allows the trial judge to vacate a final

---

[3] (...continued)
Fed. R. App. P. 4(a)(1), and did not file any motions that would have tolled the time to file her appeal, *see* Fed. R. App. P. 4(a)(4). Thus we review only the court's denial of her Rule 60(b) motion. *Castro*, 214 F.3d at 934.

[4] The defendants contend that Easley waived this argument by not presenting it to the district court in her motion to reconsider. *See Swaim v. Molton Co.*, 73 F.3d 711 (7th Cir. 1996). Although Easley's argument on appeal varies slightly from the one she presented to the district court, we think this is a distinction without a difference. At heart, Easley's argument both in the district court and on appeal is that summary judgment was improper because the court was aware that discovery was incomplete and that the court misled her into assuming that the deadline for filing responsive motions was at least coterminous with the close of discovery. We see no reason to find waiver here.

judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *Castro*, 214 F.3d at 934. A trial judge's decision to grant or deny relief under Rule 60(b)(1) is discretionary, and our review, therefore, is extremely deferential. *Castro*, 214 F.3d at 934.

On the basis of the record presented, we are convinced that the trial court did not abuse its discretion in denying Easley's motion. The court's orders regarding pretrial deadlines were unambiguous, clear, direct and straightforward. The court delineated and set forth the date for filing dispositive motions at the scheduling conference, and never deviated from its August 15, 2002 deadline. When Easley sought additional time to disclose her experts on July 2, 2002, the court granted her request, but only "*as to those experts not needed in connection with any anticipated dispositive motions to be filed August 15, 2002.*" When Easley again sought additional time, this time to complete disclosure of her expert witness on September 16, 2002—more than a month after dispositive motions were due and about the time her response to the defendants' summary judgment motions was due—the court once again gave her additional time to schedule a deposition and file her expert reports, but stated that *its original scheduling order was otherwise to remain intact*. The court's orders were neither ambiguous nor confusing, and there was nothing contradictory in the court's orders that would or should cause a diligent, conscientious, intelligent, qualified and well-trained attorney to misinterpret, much less be misled by the court's directives. Furthermore, we also note that counsel at no time asked the court for any clarification of any order. Simply put, from our reading of the record, the court did not contribute in any manner to Easley's attorney's neglect in following the court's deadline to respond to the defendants' motions for summary judgment.

Even if we were to view Easley's attorney's failure to respond to the defendants' summary judgment motions as even partially justified by contradictory signals from the court, and therefore "within the gray area between carelessness and excusable neglect," it was Easley's attorney's responsibility to seek clarification from the court before attempting to make self-serving unilateral assumptions about the court's adjustment of the pretrial calendar. *Hough v. Local 134, Int'l Bhd. of Elec. Workers*, 867 F.2d 1018, 1022 (7th Cir. 1989); *see also Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993) ("A party has a duty of diligence to inquire about the status of a case."). Although attorney carelessness can constitute "excusable neglect" under Rule 60(b)(1), *see Castro*, 214 F.3d at 934; *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359-60 (7th Cir. 1997), attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant. *See Robb*, 122 F.3d at 360; *Helm v. Resolution Trust Corp.*, 84 F.3d 874, 878 (7th Cir. 1996); *In re Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996) ("Missing a filing deadline because of slumber is fatal."). Easley's attorney's conduct can only be classified as inexcusable inattentiveness or neglect, rather than excusable carelessness. Indeed, a trial court has an obligation to control and manage its own docket, and this type of outright and consistent disregard of a court's scheduling orders—such as that exhibited here by Easley's attorney—certainly gives the trial court sufficient reason under Fed. R. Civ. P. 41(b) to involuntarily dismiss an action for want of prosecution. *See*, *e.g.*, *Aura Lamp & Lighting , Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 909-10 (7th Cir. 2003) (holding that the power to control a court's docket is vested in the trial judge, and that there comes a point when a litigant's disregard of scheduling orders becomes so serious that a sanction, including the rendering of the ultimate sanction of dismissal, is in order); *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (per curiam) ("District courts inherently possess the authority to

dismiss a case sua sponte for want of prosecution. Such a dismissal is one of the tools available to district courts 'to achieve the orderly and expeditious disposition of cases.'" (internal citations omitted)). Easley's attorney's record of conduct here in failing to prosecute her case in a lawyer-like fashion approaches a "clear record of delay or contumacious conduct" that would justify such a dismissal. *See Williams*, 155 F.3d at 857 (citing *Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir. 1998)). In a nutshell, Easley is asking us to bail her out and excuse her counsel's neglect of the case and contemptuous conduct in an attempt to shift the blame for her attorney's inattentiveness to the district court, and this we refuse to do. *Tango Music, LLC v. Deadquick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003); *Jovanic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 897 (7th Cir. 2000); *Bohlin Co.*, 6 F.3d at 356-57.

Easley repeats her prior argument, that the court improvidently granted summary judgment before allowing her to complete her discovery and thus denied her a sufficient opportunity to respond to the defendants' motions for summary judgment. In light of the numerous extensions the district court so generously granted Easley in order to provide her with an opportunity to complete her overdue discovery, notwithstanding her counsel's dilatory approach to the litigation, this argument is disingenuous at best, and borders on being frivolous. Furthermore, she and her counsel fail to offer any logical and acceptable reason in explanation of why the only discovery not completed when the court granted summary judgment—the conclusions of her's and the defendants' expert witnesses—was even relevant or necessary to her response to the defendants' motions. Thus, we are at a loss to understand why she needed further discovery before filing her response.

We do not agree with Easley that her case is analogous to those she relies on in her brief, *Farmer v. Brennan*, 81 F.3d 1444 (7th Cir. 1996) and *First Chicago International v.*

*United Exchange Co.*, 836 F.2d 1375 (D.C. Cir. 1988). In each of the factual situations she refers to, the trial courts' grant of summary judgment was improper because, at the time of the granting of the summary judgment motion, the litigants were awaiting responses to outstanding discovery requests from reluctant defendants who were withholding facts necessary for the litigants to oppose summary judgment. *Farmer*, 81 F.3d at 1450-51; *First Chi. Int'l*, 836 F.2d at 1381; *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 243-47 (4th Cir. 2002). The examples that she relies upon are far afield and certainly not analogous to the situation before us. The defendants before us were forthcoming and responsive to all of Easley's discovery requests; indeed, it was Easley and her counsel, for reasons unexplained, who did not follow the discovery schedule and failed to disclose her experts in a timely fashion. Additionally, never once did Easley, not even in her Rule 60(b) motion, explain to the court why she needed expert testimony to reply to the defendants' motions. If the conclusions of her expert were necessary to respond to the motions, she had every opportunity to file an affidavit with the court under Fed. R. Civ. P. 56(f) detailing and explaining why she needed the additional discovery. *Grayson v. O'Neill*, 308 F.3d 808, 815 (7th Cir. 2002); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483, 488-89 (6th Cir. 2000); *Roark v. City of Hazen*, 189 F.3d 758, 762 (8th Cir. 1999); *Lorenzo v. Griffith*, 12 F.3d 23, 27 n.5 (3d Cir. 1993); *Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984). Her two requests for extensions of time to disclose her expert, without more, were insufficient to "serve[ ] as the functional equivalent of an affidavit" under Rule 56(f), *First Chi. Int'l*, 836 F.2d at 1380, and alert the district court that summary judgment may have been premature. *See, e.g.*, *Cacevic*, 226 F.3d at 488-89.

We hold that the trial judge properly exercised his discretion when he denied Easley's Rule 60(b) motion and de-

clined to vacate his grant of summary judgment in favor of the defendants.[5] The trial judge was entitled to expect Easley and her counsel to comply with his clear and straightforward pretrial scheduling orders and filing deadlines, and when compliance was not forthcoming, the trial judge was empowered to end the litigation by ruling on the merits of the defendants' unopposed motions for summary judgment. We refuse to tie the trial judge's hands and take away one of the tools necessary to enforce his scheduling orders and organize his trial calendars. It is regrettable that Easley, either through her own or her attorney's negligence, or perhaps a combination of both, may very well have missed an opportunity to pursue what may possibly have been a meritorious cause of action (we express no opinion as to the merits of her claim). However, "[c]lients must be held accountable for the acts and omissions of their attorneys."[6] *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *see also Tango Music*, 348 F.3d at 247 ("If the lawyer's neglect protected the client from ill consequences,

---

[5] Easley's alternate request for relief, under Rule 60(b)(6)'s catchall provision, for "any other reason justifying relief from the operation of the judgment," is unavailable when attorney negligence is at issue. *See Helm v. Resolution Trust Corp.*, 84 F.3d 874, 879 (7th Cir. 1996). Thus we do not address this argument.

[6] We note with disapproval the lackadaisical and questionable conduct of Easley's attorney in this case. The Model Rules of Professional Responsibility require an attorney to "act with reasonable diligence and promptness in representing a client." Model Rules of Prof'l Conduct R. 1.3 (2002). Easley's attorney's conduct fell vastly short of meeting his required level of professional responsibility in this case. But Easley cannot employ her attorney's unprofessional conduct as a mechanism for reopening her cause of action against the defendants. "If a party's lawyer is guilty of professional malpractice . . . the party has a remedy against him, but it should not be permitted to shift the burden of its agent's neglect to the district court and the defendants." *Tango Music*, 348 F.3d at 247.

neglect would become all too common. It would be a free good." (quoting *United States v. 8136 S. Dobson St.*, 125 F.3d 1076, 1084 (7th Cir. 1997))). Therefore, the decision of the district court is

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*