In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 04-4326

RICHARD F. HARRINGTON, TAVARES
HARRINGTON, TYJUAN KIDD, et al.,

*v.*                    *Plaintiffs-Appellants,*

CITY OF CHICAGO, OFFICER DELGADO,
OFFICER MORAN, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 00188—**John F. Grady**, *Judge.*

_____

ARGUED DECEMBER 2, 2005—DECIDED JANUARY 3, 2006

_____

Before BAUER, POSNER, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Claims of excessive force by police officers are at the heart of this suit brought under 42 U.S.C. § 1983. However, before the merits could be heard, the repeated inattention of the plaintiffs' attorney to the case caused the district court to dismiss it for want of prosecution. The attorney, T. Lee Boyd, Jr., then moved, on behalf of his clients, to vacate the dismissal. The district court denied the motion, and we affirm.

## I.

In January 2003, Richard Harrington, Tavares Harrington, Tyjuan Kidd, and Brenda Johnson sued the City of Chicago and several of its police officers (collectively "the City"), asserting claims of excessive force and related claims. The district court set the scheduling conference in the case for September 16, 2003. The district court also ordered the parties to exchange material documents in advance of the conference.

The plaintiffs' attorney, T. Lee Boyd, Jr., failed to appear at the conference and did not provide any documents as ordered. Without such documents, the City had no information about the damages that the plaintiffs were claiming. As a result, the district court explicitly ordered the plaintiffs to disclose medical records or other information concerning their purported damages. The district court also scheduled a status conference for October 22, 2003, and issued the following warning: "Failure of counsel for plaintiffs to appear at that conference will result in a dismissal of the case for want [of] prosecution."

Boyd appeared for the status conference, and the district court called Boyd's attention to his absence at the scheduling conference. Boyd only offered this explanation: "Judge, what happened was, Judge, I had just gotten back in town. It didn't get on my call. I didn't recognize— realize, Judge, until later. So I apologize for that." As far as information on damages, Boyd gave the City some pictures of bruises allegedly inflicted by the defendant officers but no medical records, even though some of the plaintiffs were allegedly hospitalized after the underlying incident. The district court continued the status conference until April 28, 2004, two days before the discovery cutoff date.

Over the next several months, matters did not go well. Boyd and his clients missed several deposition dates without explanation. The City's written discovery requests went unanswered as did the City's inquiries into why Boyd and his clients were not responding or otherwise participating in discovery. As the end of the discovery period approached, Boyd had disclosed nothing but the aforementioned photographs. Boyd did not communicate with opposing counsel or the district court to explain his inattention to discovery or to seek any adjournments/extensions. While in some instances he had grounds to request extensions of time (e.g., death in the family), he repeatedly did not do so. In sum, Boyd simply ignored the case for months on end.

When the April 28 date for the status conference arrived, Boyd again failed to appear. In his absence, Boyd sent a paralegal. Defense counsel recounted Boyd's inactivity during discovery for the district court and stated that, despite making many attempts, "I've had no contact, no response, no participation whatsoever from the plaintiffs on this case." When Boyd's paralegal attempted to respond, in open court, the district court refused to hear from the paralegal, stating, "I do not permit the unauthorized practice of law." The district court then ruled: "This case is dismissed for want of prosecution because of the complete and consistent failure of plaintiff to cooperate in discovery." A written judgment to this effect was entered on April 29.

On May 10, Boyd responded by filing a "motion to vacate the court's order of April 28, 2004 dismissing the instant matter for want of prosecution." In the motion, Boyd cited no authority, not even a federal rule. The motion recounted some dates, offered some excuses, and prom-

ised future cooperation. After a hearing[1] and further briefing, the district court construed the motion as filed under Fed. R. Civ. P. 60(b) and then denied it. Boyd, on behalf of his clients, appeals.

## II.

Because Boyd's post-judgment motion is so vague, the first matter to address is whether the motion should be treated as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), as Boyd now requests, or as a motion for relief under Rule 60(b), as the district court treated it. Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Vacating a judgment under Rule 60(b) is permissible for a variety of reasons including mistake, excusable neglect, newly discovered evidence, and fraud. *See* Fed. R. Civ. P. 60(b). While the two rules have similarities, "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (quotation omitted).

---

[1] The district court found Boyd less than credible at the hearing and later observed: "Compounding matters further, when presenting this motion, Boyd represented the following to the court: 'Judge, I have been practicing 31 years and I have been in and out of these courtrooms, Judge, and I have never had this kind of situation occur.' Our research suggests otherwise; suffice it to say, Boyd's outright disregard for court orders and rules of procedure is not limited to this case. *See Russell v. O'Grady*, 908 F.2d 975 (7th Cir. 1990) (unpublished opinion); *Crawford v. Bank of Am.*, 181 F.R.D. 363 (N.D. Ill.1998)."

Rule 59(e), by contrast, requires that the movant "clearly establish" one of the aforementioned grounds for relief. *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001). Regardless, we review decisions under each rule only for abuse of discretion. *See id.*

Because Boyd filed the motion within ten days of the entry of judgment, the motion could procedurally qualify as a Rule 59(e) motion. *See* Fed. R. Civ. P. 59(e); *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) (citing *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986)). The district court, however, evaluated Boyd's motion as a Rule 60(b) motion because "the only arguable basis for relief presented in the motion is Rule 60(b)'s 'excusable neglect.' " This assessment is correct. What is more, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures," which is precisely what Boyd attempts in the motion here. *Bordelon*, 233 F.3d at 529 (quotation omitted). Boyd's motion is simply a plea for the district court to excuse his neglect in prosecuting this case; as such, the motion advances no grounds to support Rule 59(e) relief. *See id.* Furthermore, as was the case in *Ball v. City of Chicago*, "[t]he motion in this case not only did not mention Rule 59(e); it was not captioned a motion to alter or amend judgment, which is the language of that rule, and indeed used the word 'vacate,' which is the language of Rule 60(b)." 2 F.3d at 760. On this point, our admonition in *Ball* bears repeating here: "If a litigant wants the benefit of whatever lower threshold of proof Rule 59(e) may offer, it behooves him to indicate that his motion is under Rule 59(e)." *Id.* For these reasons, the district court properly reviewed Boyd's motion under Rule 60(b), specifically, Rule 60(b)(1), which covers excusable neglect. *See id.*

"[T]rial judges are vested with discretion when determining whether an attorney's neglect . . . is 'excusable' for

purposes of Rule 60(b)(1)," *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 363 (7th Cir. 1997), and "our review is, therefore, extremely deferential." *Castro v. Bd. of Educ.*, 214 F.3d 932, 934 (7th Cir. 2000). "Although attorney carelessness can constitute 'excusable neglect' under Rule 60(b)(1), attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (internal citations omitted).

Turning to Boyd's proffered excuses, he first contends that he and his clients did not respond to discovery requests and did not appear for noticed depositions during the October 2003 to April 2004 discovery period because criminal charges (aggravated battery of police officers) related to the underlying incident in this case were pending during that entire period against two plaintiffs, Richard and Tavares Harrington. As for the other two plaintiffs, Johnson was not subject to criminal proceedings, and criminal charges against Kidd had already been dismissed. Per Boyd's request at the October 2003 conference, the district court stayed the Harringtons' depositions until February 1, 2004, due to their ongoing criminal cases which, at that juncture, had been pending for eighteen months and which Boyd predicted would be tried in January 2004. As it turned out, the charges remained pending until July 2004, when the Harringtons pleaded guilty. Boyd, however, never sought an extension of the stay nor an extension of the discovery period.

The district court's stay was straightforward and limited: "It is ordered that the depositions of the Harrington plaintiffs' [sic] are stayed until after 2/1/04." Importantly, the district court did not stay other forms of discovery (e.g.,

interrogatories, document requests) or the depositions of Kidd and Johnson. Accordingly, the pendency of the Harringtons' criminal cases and the corresponding stay did not justify the failure to respond to the City's written discovery requests throughout the discovery period nor the failure to show up for the Kidd and Johnson deposition dates in December 2003 and the rescheduled dates in March 2004. Had Boyd believed the stay was too narrow, he could have moved to expand it to include additional matters, but he certainly should not have considered it a license to ignore all discovery attempts by the City.

In compliance with the stay, the City scheduled the Richard and Tavares Harrington depositions for February 3 and 4, respectively. However, as was the case with Kidd and Johnson, Boyd and Richard Harrington did not appear for the February 3 deposition. Again, Boyd did not request an extension of the stay beyond February 1. He did not even communicate with opposing counsel about the missed deposition. Rather, counsel for the City made immediate inquiries of Boyd by telephone and fax to see what had happened and to request confirmation that Tavares Harrington would appear for the February 4 deposition. Boyd did not respond, and the February 4 deposition did not go forward. The City rescheduled the depositions for late February and early March, but Boyd and his clients, in a similar fashion, again failed to participate. Boyd appears to have assumed that, since he was granted a stay in October 2003 on account of the pendency of the criminal cases, the stay would continue until the outstanding criminal charges had been resolved. This assumption is unfounded and inexcusable. *See Easley*, 382 F.3d at 698 (counsel's "unilateral assumptions" about a district court adjusting a pretrial calendar did not constitute

excusable neglect). As the district court correctly observed, if Boyd and his clients wanted to extend the stay, "it was incumbent upon them to seek an extension of the stay." *See* Fed. R. Civ. P. 6(b)(1). They did not, and Boyd's argument here is meritless.

Boyd also attempts to justify his inaction during the entire discovery period with the fact that his sister and father died in January and February 2004, respectively.[2] How these unfortunate events related to his inattention to the case before January 2004 is unexplained. As to the later period, the district court found the excuse insufficient. This district court's handling of this issue was more than appropriate: "While we realize that Boyd was going through a difficult period during a portion of this case, there is nothing in the record to suggest that Boyd's circumstances prevented him from advising the court or defendants of his situation. Had he done so, we have no doubt that appropriate accommodations would have been made." Put simply, despite the deaths of his family members, Boyd could have and should have contacted the district court and opposing counsel to explain his circumstances and to work out amicable solutions, such as an enlargement of the discovery period and adjournments of depositions. *See* Fed. R. Civ. P. 6(b)(1). Instead, Boyd kept opposing counsel in the dark while opposing counsel was earnestly attempting to conduct discovery. Boyd's abandonment of this case during discovery, therefore, cannot be excused by the deaths in his family. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 896-97 (7th Cir. 2000) (counsel's "family crisis to

---

[2] However, at least one other case during the discovery period (October 2003 to April 2004) did not escape Boyd's attention. As discussed below, Boyd tried a state criminal case that April.

which he had to attend" did not constitute excusable neglect); *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 61, 65 (1st Cir. 2001) ("[A] lawyer's duty of diligence transcends both upheaval at work and personal tragedy.") (death of counsel's brother, who was also his law partner, did not constitute excusable neglect when counsel failed to respond to discovery requests and the case was dismissed for lack of prosecution).

Additionally, Boyd complains that the City never filed motions to compel discovery and implies that this fact should excuse his repeated lapses during discovery. He is thus suggesting that he could ignore discovery proceedings and avoid dismissal so long as opposing counsel had not filed a motion to compel. Boyd cites no authority for this notion. This is not surprising, since long-standing precedent holds that district courts have the inherent power to remedy dilatory conduct by dismissing a case for want of prosecution without a motion from the opposing party. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *O'Rourke Bros., Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 952 (7th Cir. 2000).

Beyond his idleness during discovery, Boyd's failure to appear before the district court at the April 28 status conference was a critical factor in the dismissal. Boyd attempts to excuse this absence with the fact that, on the date in question, he was in trial in state court on an unrelated criminal matter. At oral argument on appeal, Boyd further cited his status as a sole practitioner and suggested that his preoccupation with this other case made it impossible for him to attend the status conference. Be that as it may, it is widely accepted that neglect due to a busy schedule is not excusable. *See United States v. Dumas*, 94 F.3d 286, 289 (7th Cir. 1996); *Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir. 2003); *Hunt v. City of Minneapolis*, 203 F.3d

524, 528 n.3 (8th Cir. 2000); *Baker v. Raulie*, 879 F.2d 1396, 1399-1400 (6th Cir. 1989); *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1569 (11th Cir. 1987). Common sense dictates that there is a limit to the quantity of cases a sole practitioner can professionally handle by himself at any one point in time. Although Boyd expressed at oral argument that he had done the best he could in this case, he appears to have exceeded that limit here.

We need not repeat the frequent infractions set out here and in the record. Suffice it to say, Boyd's failure to notify the district court and opposing counsel about his conflicting trial date before the status conference is inexcusable.[3] Sole practitioner or not, Boyd, as a member of the bar, had duties to his clients, to opposing counsel, and to the district court—not the least of which was respect. *See Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 856 (7th Cir. 1998); *United States v. Stillwell*, 810 F.2d 135, 136 (7th Cir. 1986); *Wagner v. Williford*, 804 F.2d 1012, 1017-18 (7th Cir. 1986); *Stonkus*, 322 F.3d at 101; *Vela v. W. Elec. Co.*, 709 F.2d 375, 377 (5th Cir. 1983); *see generally* Standards for Professional Conduct within the Seventh Federal Judicial Circuit.[4]

---

[3]  *See* R.23 at 3 (district court to Boyd: "All you had to do was make a phone call to my chambers and tell us you were on trial and we would have put it over. That would be no problem.").

[4]  These Standards are accessible at www.ca7.uscourts.gov/ Rules/rules.htm#standards. Paragraph 16 of the section entitled "Lawyers' Duties to Other Counsel" reads as follows: "We will notify other counsel and, if appropriate, the court or other persons, at the earliest possible time when hearings, depositions, meetings, or conferences are to be canceled or postponed. Early notice avoids unnecessary travel and expense of counsel and may enable the court to use the previously reserved time for other

(continued...)

Relatedly, Boyd faults the district court for not hear-
ing from his paralegal at the on-the-record status confer-
ence. There are two points here. First, to the extent the
paralegal was simply carrying a message to the status
conference that Boyd was in trial and could not attend that
very conference, that message was too late. As discussed
above, such an inability-to-appear message should be
received in advance of the event in question in order to
avoid wasting the district court's and opposing counsel's
time. Second, to the extent that Boyd sent the paralegal to
appear before the district court and speak to the status of
the case at the conference, the district court properly refused
to hear from the paralegal. The practice of law includes
appearances in court, *see United States v. Johnson*, 327 F.3d
554, 561 n.10 (7th Cir. 2004), and, as the paralegal was not
licensed to practice law, the district court's policing of this
conduct was certainly appropriate, *see id.* at 559-61.

Boyd also seeks to excuse his conduct by complaining that
the district court did not give him notice about the possibil-
ity of dismissal. The record indicates otherwise. The rule is
that district courts "should not dismiss a case on [failure-to-
prosecute] ground[s] without due warning to the plaintiff's
counsel." *Ball*, 2 F.3d at 755; *see also Tango Music, LLC v.
Deadquick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2004). Here,
the district court did give Boyd "due warning" about the
possibility of dismissal. After Boyd skipped the September

(…continued)
matters." Further, we note that the application to join the bar of
the Northern District of Illinois (which is this case's district of
origin) declares the following: "I have read and will faithfully
adhere to the Standards for Professional Conduct within the
Seventh Federal Judicial Circuit." This application is available at
www.ilnd.uscourts.gov/PUBLIC/Forms/ genbar99.pdf.

scheduling conference, the district court ordered the October status conference and, again, stated: "Failure of counsel for plaintiffs to appear at that conference will result in a dismissal of the case for want [of] prosecution." This was an explicit warning directed to Boyd and not a standing order generally directed to all members of the bar. *See Ball*, 2 F.3d at 755-56. Moreover, district courts need not repeat their dismissal warnings, and district courts are "not obliged to treat lawyers like children." *Id.* at 755. Thus, the fact that the order referred to the October conference does not alter the analysis; the warning was adequate to put a lawyer on notice that another failure to appear for a court date in this case would trigger dismissal. *See id.* at 755-56; *cf. Tango Music*, 348 F.3d at 246-47; *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003). Consequently, when Boyd failed to appear at the next court date, the April 28 status conference, the district court was on solid ground in dismissing the case.

Boyd further suggests that there was not a "clear record of delay or contumacious conduct" to justify the dismissal. *Easley*, 382 F.3d at 698. On the contrary, the failures to appear for court dates, to disclose material documents as ordered, to respond to written discovery requests, to appear for noticed depositions, and to respond to opposing counsel's inquiries into why Boyd and his clients were not participating in discovery comprise a sufficient record of delay. *See id.* At bottom, there was more than enough here to dismiss the case for want of prosecution, and the district court did not abuse its discretion in finding a lack of excusable neglect under Rule 60(b)(1).[5]

---

[5] Alternatively, had we reviewed Boyd's motion under Rule 59(e), the outcome would be the same. *See Tango Music*, 348

(continued...)

### III.

The district court did not abuse its discretion in denying the Rule 60(b) motion to vacate the dismissal for failure to prosecute. The record does not reveal any permissible justification to excuse Boyd's failures to appear before the district court and the inattention to discovery obligations.

AFFIRMED

---

(...continued)

F.3d at 247. (Whether this postjudgment motion is reviewed under Rule 59(e) or 60(b) is of "[n]o matter; whatever the precise scope or standard of review, it is clear that the judge acted properly in dismissing the suit for failure to prosecute after clearly warning the plaintiff's counsel that a further neglect of deadlines would lead to that result."); *Romo*, 250 F.3d at 1121 n.3 ("We do not believe that the Romos could have fared any better under the more hospitable standard of Rule 59(e).").

A true Copy:

      Teste:

                           _____

                           *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*