**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 22, 2009[*]
Decided February 3, 2009

**By the Court:**

No. 08-2139

| | |
|---|---|
| ROMEO EZIKE, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 07 C 1972 |
| NATIONAL RAILROAD PASSENGER | |
| CORPORATION, et al., | Ruben Castillo, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Romeo Ezike appeals from the dismissal of his lawsuit against AMTRAK, the Elgin Mental Health Center, and other disparate defendants. The district court dismissed the suit after Ezike failed to comply with an order directing him to attend a status hearing and to provide the court with a "valid" mailing address. We affirm the judgment but on a different ground.

In his second amended complaint, Ezike provides a lengthy narrative that begins in 2000 when he was employed in Minnesota. We recount only the highlights. Ezike suspected that management had retaliated against him for his complaints about working conditions by, among other things, poisoning his coffee, giving him a vision test that permanently damaged his eyesight, and sending people to call him derogatory names and provoke him into fights. Ezike filed a charge of discrimination with the Equal Employment Opportunity

---

[*]The named defendants were not served in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the appellant's brief and the record. See FED. R. APP. P. 34(a)(2).

Commission but ultimately concluded that the agency was secretly staffed by persons working for his employer. He was fired from his job and decided to pursue a new career as a trucker but became convinced that classmates at his truck-driving school were conspiring to harass him on behalf of the teamsters union. Ezike then took a job in the state of Washington delivering packages but alleged that he continued to experience harassment from companies with union connections, persons of Indian descent, and men with guns hiding behind trees. He returned to trucking, though he suspected that someone had tampered with his truck and later with the brakes of his car. He was eventually fired from this job and fled first to Brazil and later to places throughout the continental United States.

By 2004, Ezike was living in Illinois. That year he sued both his Minnesota and Washington employers in the Northern District of Illinois claiming employment discrimination. The district court dismissed the suit against the Minnesota employer as time-barred, and in November 2005 granted the Washington employer's motion for summary judgment. The court discerned no evidence of discrimination by the two defendants. *Ezike v. DHL/Airborne*, No. 04 C 4476, 2005 WL 3050632, at *4 (N.D. Ill. Nov. 10, 2005).

Two weeks after that litigation ended, on November 28, Ezike became convinced that violent persons were chasing him on Jackson Boulevard in Chicago. He sought refuge in Union Station, where he intended to buy a train ticket to California, but soon he suspected that AMTRAK police were following him around the station. Documents attached to his complaint confirm that, when Ezike sought out an AMTRAK supervisor to lodge a complaint, the employee ran a criminal check and discovered that Ezike had been convicted of sexual assault in California but had never registered in Illinois (or California) as a sex offender. See 730 ILCS 150/3. The police were called, and Ezike was arrested. A state court ordered him detained in the Elgin Mental Health Center where, according to medical records submitted by Ezike, he was diagnosed with delusional disorder, persecutory type, and found unfit to stand trial. He was released when the criminal charges were dismissed in December 2007. He then moved to San Francisco, California.

Meanwhile, Ezike commenced this litigation in 2007 during his pretrial detention in Elgin. He claims that AMTRAK, the mental-health center, and other defendants violated his civil rights as well as antitrust and racketeering statutes. The district court permitted Ezike to proceed *in forma pauperis* and eventually ordered the marshals service to serve one of the defendants, but communication with Ezike purportedly was hampered by his use of a general delivery mailing address after he moved to San Francisco. On March 25, 2008, the district court issued a minute order dismissing the case without prejudice on the ground that Ezike had not complied with court rules requiring a "valid" address. The court set a

status hearing for the following month and advised Ezike that he could move to reopen the case if he provided a valid address. The court warned Ezike that his lawsuit might be dismissed with prejudice for want of prosecution if he or a lawyer did not attend the status hearing. But Ezike never appeared at the hearing on April 24, and that same day the court issued a minute order making its earlier dismissal with prejudice. The court's order notes that Ezike had failed to appear and had continued filing papers without his "specific address." The order concludes that Ezike's lawsuit was being dismissed with prejudice for "failure to comply" with the March 25 order.

We cannot tell from the district court's brief April 24 order whether the dismissal with prejudice rests on Ezike's failure to provide a "specific" mailing address or his failure to attend the status hearing. If the court meant the former, then the ruling is problematic. Ezike argues that the court did have his "valid" mailing address, and he notes that, before the dismissal, the clerk of the district court was sending mail to that address: General Delivery, San Francisco, California 94142. The district court did not say what "rules" Ezike violated by using a general-delivery address, and we have not found any authority holding that a litigant cannot utilize general delivery when required by the rules of procedure to supply an address. No mention of "address" in either the Federal Rules of Civil Procedure or the local rules of the Northern District of Illinois includes any qualification or definition for that term. See, e.g., FED. R. CIV. P. 11(a) (providing that all papers filed in district court must include litigant's "address"). Indeed, this court permits litigants to utilize general delivery, and the three relevant decisions we have located—all of them unpublished and all from district courts within this circuit—take for granted that a general-delivery address ordinarily is sufficient. See *Mellender v. Larson*, No. 06-C-547-C, 2007 WL 5658883, at *2 (W.D. Wis. Apr. 16, 2007) (directing *pro se* plaintiff to supplement his general-delivery address with telephone number or another address to facilitate communication with newly appointed counsel); *United States v. Wesselman*, No. 05-cv-4152-JPG, 2007 WL 627469, at *1 (S.D. Ill. Feb. 26, 2007) (noting that defendant who provided general-delivery address had complied with district court's directive to give court "an address at which he could receive mailings in this case"); *United States v. Lerch*, No. 1:97-CV-35 AS, 1997 WL 401547 (N.D. Ind. Mar. 28, 1997) (acknowledging plaintiff's general-delivery address as sufficient). The United States Postal Service still permits use of general delivery, see USPS - Receive Mail at Other Locations, https://www.usps.com/receive/choicesfordelivery/receivemailinother places.htm (last visited Jan. 23, 2008), and the Supreme Court has recognized general delivery as a valid option for postal service. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 125-26 (1981) (explaining that "the provision for 'General Delivery' in most post offices enables a person to take advantage of the facilities of the Postal Service"); see also *Currier v. Potter*, 379 F.3d 716, 722 (9th Cir. 2004) (observing that general-delivery service "permits a person to receive mail addressed merely to his or her name, with the designation 'General

Delivery, [City Name]'"). The Postal Service even touts general delivery as a "great choice" for someone without a Post Office Box or carrier service. USPS - Receive Mail at Other Locations.

If instead the district court meant by "failure to comply" with its March 25 order that Ezike had not attended the status hearing as directed, the choice of sanction would still be questionable. Ezike's brief does not discuss his failure to appear, other than to note that he feared for his safety if he returned to Chicago. The district court had warned Ezike that his case might be dismissed with prejudice for want of prosecution if he did not attend (or hire counsel to attend) the status hearing, so Ezike was on notice of the possible consequence for not appearing. See *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 725 (7th Cir. 2004) (noting that a district court ordinarily must provide plaintiff with explicit warning before dismissing for want of prosecution). Dismissal for failure to prosecute, however, is a harsh sanction that should be reserved for "extreme situations" involving a clear record of delay or contumacious conduct, or when lesser sanctions have proven ineffective. E.g., *Gabriel v. Hamlin*, 514 F.3d 734, 736-37 (7th Cir. 2008); *Harrington v. City of Chi.*, 433 F.3d 542, 550 (7th Cir. 2006); *Maynard v. Nygren*, 332 F.3d 462, 467-68 (7th Cir. 2003). The court, though, pointed to no pattern of delay or litigation misconduct by Ezike. See *Gabriel*, 514 F.3d at 738.

That does not mean it was error to dismiss Ezike's lawsuit. The district court already had dismissed Ezike's first two complaints without prejudice for failure to state a claim, and his third attempt, like the first two, is patently frivolous. A complaint that is wholly insubstantial does not invoke the district court's subject-matter jurisdiction, see *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *African-American Slave Descendants Litig.*, 471 F.3d 754, 757 (7th Cir. 2006). When it becomes clear that a suit filed *in forma pauperis* is irrational or delusional, the district court is required to dismiss it, see 28 U.S.C. § 1915(e)(2)(B)(i). Moreover, if the allegations are so fanciful that they fail to engage the court's subject-matter jurisdiction, that dismissal should be without prejudice. See *African-American Slave Descendants Litig.*, 471 F.3d at 758, 763. That is what the district court should have done here. Ezike's operative complaint, with its lengthy narrative of a five-year conspiracy involving employers in different states, the teamsters, people of Indian descent, AMTRAK police, and armed secret agents harassing him as he traversed this country and others is wholly incredible and patently frivolous. See *Gladney*, 302 F.3d at 774. The district court alerted Ezike in his previous lawsuit that his suggested racketeering claim would not withstand a motion to dismiss. *Ezike*, 2005 WL 3050632, at *1. Though he may be convinced that the teamsters have orchestrated misery in his life at every turn, he cannot support the grand conspiracy he asserts.

Ezike's complaints were so insubstantial that they failed to engage the district court's subject-matter jurisdiction. This means that, although it was correct to dismiss the action, the order should not have been with prejudice. We therefore VACATE the judgment of the district court and REMAND with instructions to dismiss for want of jurisdiction.