**In re: BRIDGESTONE/FIRESTONE, INCORPORATED, TIRES PRODUCTS LIABILITY LITIGATION.**

No. 04–1462.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 2004.

Decided March 1, 2005.

Arturo Luciano–Delgado, San Juan, PR, for Plaintiff–Appellant.

Randall Riggs, Locke Reynolds, Mark J.R. Merkle, Krieg Devault, Indianapolis, IN, for Defendants–Appellees.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

## ORDER

Guillermo Figoli–Gomez and his family initially filed this action in January 2002 in the United States District Court for the District of Puerto Rico. They claimed that they had suffered injuries when the tires on their Ford Explorer allegedly failed in Argentina. The MDL panel transferred their action, along with other Bridgestone/Firestone, Inc. and Ford Motor Co. products liability cases, to the Southern District of Indiana. After almost two years, Bridgestone/Firestone moved to dismiss for want of prosecution. Mr. Gomez failed to respond, and the district court dismissed the action. Shortly thereafter, Mr. Gomez filed a motion for an extension of time to respond, and, without leave of the district court, followed with his response to the motion to dismiss. The district court construed Mr. Gomez' response as a motion to reconsider, but denied the motion. For the reasons set forth in the following order, we affirm the judgment of the district court.

## I

## BACKGROUND

On July 21, 2001, Mr. Gomez, a citizen of the Republic of Argentina, was a rear-seat passenger in a 1998 Ford Explorer. The vehicle left the road and rolled several times near Pilar, Argentina. The accident allegedly resulted when the tread on one of the vehicle's Firestone tires separated. Mr. Gomez received a permanent injury.

Mr. Gomez filed this lawsuit against defendants Ford Motor Co. and Bridgestone/Firestone, Inc. (collectively, "Bridgestone/Firestone"), on January 3, 2002. Jurisdiction over the action, brought originally in the United States District Court for the District of Puerto Rico, was premised on diversity of citizenship. The complaint based the claim for recovery on strict liability for manufacturing and design defects as well as on negligence-based theories.

The Judicial Panel on Multidistrict Litigation ("JPML") issued a conditional transfer order to Mr. Gomez on February 12, 2002.[1] Mr. Gomez filed a notice oppos-

---

1. The Judicial Panel on Multidistrict Litigation ("JPML") had consolidated a number of cases alleging similar causes of action before

Judge Sarah Evans Barker of the United States District Court for the Southern District of Indiana. *See generally In re Bridge-*

ing the proposed transfer, but subsequently failed to submit a motion or a brief in support of that motion. The JPML therefore ordered his case transferred to the Southern District of Indiana on March 22, 2002.

On February 20, 2003, the district court ordered Mr. Gomez to show cause why he should not be held in contempt for violating the court's February 2, 2001 order establishing a litigation trust fund. Mr. Gomez responded to this order by indicating that he had an agreement with another law firm to pay the required amount, but the other firm had failed in its obligations. He tendered his payment into the fund, as required, on June 17, 2003.

In the meantime, the district court published its case management schedule in an April 8, 2003 order, dividing the Bridgestone/Firestone litigation into two groups. Mr. Gomez' action was categorized as a "Foreign Accident Case" and, under the case management order, the parties were to complete a series of discovery deadlines by August 15, 2003. Apparently, Mr. Gomez still had not served process on Bridgestone/Firestone by August 27, 2003. On that date, the district court issued an order for Mr. Gomez to show cause by September 15, 2003 why the court should not dismiss the action. On September 19, 2003, Mr. Gomez answered the order to show cause; he submitted that he mistakenly believed service had been perfected. At the same time, he filed a motion to enlarge time in which to serve the defendants. Although he attached a certificate of service to his filings, the defendants claim that they never received his response to the order to show cause or his motion to enlarge time.

On October 9, 2003, the district court excused the delay in part because the statute of limitations had run on Mr. Gomez' claim. The court warned of its skepticism

> that an enlargement to effect service will advance the resolution of this case. The docket suggests that the plaintiffs have done little, if anything, to prosecute this case since they filed it nearly two years ago. And contrary to their assertion in their request for enlargement that 'there is no ... deadline for which any party has been scheduling or otherwise preparing,' numerous deadlines have been scheduled in this case and have apparently expired.

R.12 at 1–2. In spite of its skepticism, the district court granted a 21–day enlargement of time. Finally, Mr. Gomez effected service on October 29, 2003.

Very little happened in the case until mid-December 2003.[2] Bridgestone/Firestone then moved to dismiss Mr. Gomez' complaint for failure to prosecute, citing among other things the history recounted above and Mr. Gomez' failure to comply with the case management deadlines—ten missed deadlines in all. In Bridgestone/Firestone's eyes, Mr. Gomez' failures were particularly important because other MDL cases in his category had completed pre-trial matters and were ready to be remanded to the originating district courts.

Mr. Gomez did not respond to Bridgestone/Firestone's motion. On January 22, 2004, well after the deadline for Mr. Gomez to respond, the district court considered the defendants' motion to dismiss. Recalling its October 9 warning, the district court noted that

---

stone/Firestone, Inc., 288 F.3d 1012 (7th Cir. 2002).

**2.** The district court granted Bridgestone/Firestone and Ford an extension of time in which to file their answer to Mr. Gomez' complaint.

[t]he defendants' joint motion to dismiss details what was apparent to the Court at th[e] time [of the October 9 order]: the plaintiffs have done nothing to prosecute this case, and virtually every deadline established by the applicable case management orders has expired. In addition, the plaintiffs have made no response to the motion to dismiss.

R.29 at 2. The district court accordingly granted Bridgestone/Firestone's motion and dismissed Mr. Gomez' case with prejudice.

On January 28, 2004—almost a month after his response was due and a week after the district court dismissed his case—Mr. Gomez filed a motion requesting an extension of time in which to respond to the already-granted motion to dismiss. Without waiting for a response on the extension motion, Mr. Gomez filed a motion opposing dismissal on February 3, 2004. He contended, among other things, that his obligation to prosecute the case did not arise until he effected service of process on October 29, and that the deadlines did not apply to him until that time. He also challenged the district court's dismissal on the ground that the court had not explicitly warned him that it was considering such action. In his view, the appropriate action was to sanction his lawyer, not to dismiss the cause of action outright.

The district court construed Mr. Gomez' late motion in opposition as a motion to reconsider the dismissal. Aware that dismissal ended Mr. Gomez' chances for recovery, the court nevertheless determined that his motion was without merit. In the district court's view, Mr. Gomez' failure to respond in a timely manner to Bridgestone/Firestone's motion to dismiss confirmed a lack of diligence that had been characteristic of his handling of the case from the beginning.[3] Recognizing that dismissal would end Mr. Gomez' case and the possibility that such an action would penalize Mr. Gomez for the failings of his counsel, the district court nevertheless determined that his "failings [were] ... so extreme that any judicial response short of dismissal would undermine the Court's responsibility for the orderly management of this MDL." R.33 at 3. The district court therefore denied his motion to reconsider, and Mr. Gomez filed a timely notice of appeal.

## II

## DISCUSSION

### A. Standard of Review

This court reviews for abuse of discretion a district court's decision to dismiss a suit for want of prosecution. *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 248 (7th Cir.2003). The review is highly deferential; a district court's de-

---

**3.** For example, Mr. Gomez asserted that the district court erred in dismissing the case for want of prosecution because important discovery deadlines had not passed. The district court rejected this argument because it was premised on a mistaken application of the schedule of post-December 1, 2003 cases to Mr. Gomez' pre–2003 case. The district court characterized Mr. Gomez' motion to reconsider as "play[ing] fast and loose with the facts." R.33 at 2. Mr. Gomez' assertion that his obligations under the case management schedule did not arise until after he

served the defendants was particularly strained. He finally served Bridgestone/Firestone under near-compulsion from the district court, more than eighteen months after filing suit and after the case management deadlines had expired. The court found an inherent inconsistency between his original excuse for not serving the defendants—that he mistakenly believed they had been served—and his assertion here that he did not comply with discovery deadlines because he knew the defendants had not been served.

cision may be reversed only if "fundamentally wrong." *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.,* 325 F.3d 903, 908 (7th Cir.2003).

Mr. Gomez submits that the district court erred in several respects. First, he contends that the district court failed to offer an explicit warning that it was considering dismissal as a sanction, a warning he believes is required under *Ball v. City of Chicago,* 2 F.3d 752 (7th Cir.1993). Second, relatedly, he submits that the district court should have considered less severe sanctions. He believes that dismissal operates as a sanction against Mr. Gomez himself rather than the actual culpable party, his attorney. According to Mr. Gomez, dismissal should be reserved to cases when the plaintiff's conduct is serious or inexcusable, and only should be used as a last resort when lesser sanctions have failed. Third, relying on *Ball,* he contends that a defendant must show prejudice from the alleged failure to prosecute before a district court may grant a motion to dismiss. Finally, Mr. Gomez takes exception to the district court's belief that he did essentially nothing to prosecute the case. In this respect, he reasserts his argument that the discovery schedule did not start until he effected service and notes that he complied with the district court's orders after service was accomplished.

Mr. Gomez correctly notes that dismissal is an extreme sanction. Indeed, we have referred to the practice of dismissing a cause of action to sanction the plaintiff's lack of prosecution as "draconian." *Maynard v. Nygren,* 332 F.3d 462, 467 (7th Cir.2003). Dismissal is only appropriate "when there is a clear record of delay *or* contumacious conduct, *or* when other less drastic sanctions have proven unavailing." *Id.* (quoting *Williams v. Chicago Bd. of Educ.,* 155 F.3d 853, 857 (7th Cir.1998) (emphasis added)). Particularly egregious misconduct may be punished by dismissal without warning, *Bolt v. Loy,* 227 F.3d 854, 856 (7th Cir.2000), but ordinary misconduct requires a district court to warn the party and consider whether dismissal is an appropriate sanction, *id.* But see *Aura Lamp,* 325 F.3d at 908 (recommending that courts consider lesser sanctions prior to dismissal). The warning must be explicit, but need not be repeated. *Aura Lamp,* 325 F.3d at 908. The district court should consider, among other things, the frequency and magnitude of the plaintiff's failure to prosecute, the likelihood of success on the merits, prejudice to the defendant, and the impact of delay on the court's docket. *Id.* The seriousness of the delay is also a factor. *See Moffitt v. Illinois State Bd. of Educ.,* 236 F.3d 868, 873 (7th Cir.2001).

The history of this litigation indicates that, contrary to his assertion, Mr. Gomez was warned explicitly that he faced dismissal. The district court issued an order to show cause why the case should not be dismissed because Mr. Gomez failed to serve Bridgestone/Firestone for over one year. *Cf. Ball,* 2 F.3d at 755 (" 'Due warning' need not be repeated warnings and need not be formalized in a rule to show cause."). When the district court allowed Mr. Gomez to serve the defendants, it warned that he had "done little, if anything, to prosecute this case," and expressed skepticism that the matter would be resolved. Additionally, after finally serving process Mr. Gomez received Bridgestone/Firestone's motion to dismiss; this motion alone was enough to notify him that the district court contemplated dismissing the action. His failure to respond to the motion cannot obscure the fact that the motion alerted him that the district court was about to make a decision as to whether the case ought to be dismissed.

Despite knowing that a motion to dismiss was pending before the district court, it seems that Mr. Gomez persisted in neglecting the case, to the point that he failed to challenge the motion. *See Williams,* 155 F.3d at 858.

Although we have cautioned district courts against dismissing a cause of action when less drastic sanctions are available, we have never said that such consideration is a prerequisite for dismissal when a court is confronted with a party's significant delays or misconduct. *See Ball,* 2 F.3d 752; *see also Williams,* 155 F.3d at 857. Nor have we held that an opposing party must demonstrate prejudice before a district court may dismiss for want of prosecution. *See O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.,* 201 F.3d 948, 952 (7th Cir.2000) (collecting cases). Here, the district court cannot be said to have abused its discretion in granting an unopposed motion to dismiss, especially in light of Mr. Gomez' manifest failure to attend to this litigation.

It is clear that the district court considered the *Aura Lamp* factors before deciding to let the dismissal stand. For example, the court noted his failure to file a response to Bridgestone/Firestone's motion to dismiss and his complete failure to meet scheduling deadlines throughout the litigation. Given its previous experiences with Mr. Gomez, the district court had reason to consider his capacity for "play[ing] fast and loose with the facts," R.33 at 2, and the inconsistent arguments he offered in excuse for his failure to serve the defendants. Although the district court did not address the argument in its dismissal order, Bridgestone/Firestone argued, probably correctly, that not dismissing Mr. Gomez' case with prejudice would force the court to craft a separate discovery schedule for him and thereby defeat the purpose of MDL consolidation.

In the end, the district court did not approach dismissal lightly; indeed, the court appeared disposed toward giving Mr. Gomez the benefit of every doubt. The district court both gave Mr. Gomez notice and carefully considered whether dismissal was appropriate. While dismissal is an extreme sanction that risks punishing the client for an attorney's misconduct, this court has noted that "attorney inattentiveness is not excusable, no matter what the resulting consequences ... may have on a litigant." *Easley v. Kirmsee,* 382 F.3d 693, 698 (7th Cir.2004); *see also id.* (collecting cases). In light of Mr. Gomez' failure to attend to this case, we cannot say that the district court abused its discretion in ordering dismissal.

### Conclusion

For the foregoing reasons, we affirm the district court's dismissal of Mr. Gomez' suit for want of prosecution.

AFFIRMED