In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3739

ROCIO MARTINEZ,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, SERGIO ESCOBEDO,
FERNANDO GARCIA, and JOSE MENDEZ,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6974—**James B. Zagel**, *Judge.*

———————

ARGUED APRIL 30, 2007—DECIDED AUGUST 28, 2007

———————

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* This case has its roots in a domestic disturbance that erupted on August 14, 2003, between plaintiff, Rocio Martinez, and her former boyfriend, Jose Mendez. After the two argued, Mendez became violent as Martinez left his house. Martinez called the Chicago police and filed a report. Two days later, Mendez visited his friend Officer Sergio Escobedo of the CPD; Escobedo and Sergeant Fernando Garcia then arrested Martinez and accused her of violence against Mendez. Those charges were dropped, and in time Martinez filed this § 1983 action against the City of Chicago,

Escobedo, Garcia, and Mendez, raising various complaints about the arrest.

None of those claims is before this court, however, because the district court dismissed them for failure to prosecute after Martinez's lawyer, Nicholas LaPonte, repeatedly failed to attend status hearings, filed pleadings and responsive papers after the deadlines set by the court, did not turn over discovery materials, and failed to comply with the conditions set by the court for reinstatement. After clarifying which of the district court's orders are properly before us, we conclude that Judge Zagel did not abuse his discretion in refusing to find that LaPonte's neglect was excusable. If Martinez still wants her day in court, it will have to be in a legal malpractice action.

# I

Martinez initially filed her suit in the Circuit Court of Cook County, but the City of Chicago removed it to federal court on October 29, 2004. (Although there are four defendants in this suit, their interests do not differ for purposes of this appeal; we will refer to them collectively as "the City.") LaPonte was inattentive to Martinez's case from the start. He submitted three filings late, after deadlines set by the court. Three times he was a "no-show" in court, missing status hearings on April 18, October 11, and November 8, 2005. Following LaPonte's failure to appear on November 8, 2005, the court dismissed Martinez's case for want of prosecution, without prejudice to Martinez's seeking reinstatement on or by December 27, 2005.

This action got LaPonte's attention; on November 17, 2005, he moved for the case to be reinstated, and the district court obliged. Unfortunately, LaPonte's performance did not improve. At the November 17 status

hearing, he represented that Martinez was ready to provide her overdue Rule 26(a) disclosures, saying, "Judge, we are ready to move on discovery, ready to go." He promised to furnish them within "a week or so." It was not until almost seven weeks later, however, that he finally turned over any materials. On the night before the January 5, 2006, status hearing, LaPonte produced discovery materials that the City had originally produced to Martinez. These materials did not include any information about damages. To make matters worse, LaPonte failed to attend the January 5 status hearing. In response to these renewed transgressions, the court issued an order reading as follows:

> Plaintiff is ordered, within 14 days, until 1/20/2006, to supplement Rule 26(a)(1) disclosure to properly comply with the rule . . . . Plaintiff is also ordered, within 14 days, until 1/20/2006, to provide a computation of damages as specified by Rule 26(a)(1)(C). Failure to comply with this order will result in plaintiff's case being dismissed with prejudice for want of prosecution.

For unknown reasons, this order was not entered onto the docket until January 24, 2006. LaPonte claimed that he did not receive a copy of it in the mail until February 2, 2006. Once he did receive it, he apparently paid no attention to the January 20 due date. LaPonte did not contact the court or otherwise comply with the discovery order until the morning of February 9, 2006, when he faxed another set of incomplete disclosures to the City. Yet again, he failed to appear at that day's status conference, sending in his stead James Macchitelli—an attorney who had not filed a notice of appearance. The district court regarded this as unsatisfactory. At the close of the February 9 hearing, it followed up on its threat of dismissal and entered a minute order noting that the case was "dismissed for want of prosecution. Civil case terminated."

On February 23, 2006, Martinez moved "pursuant to Rules 59 or alternatively 60" for the court to reconsider or vacate its order of dismissal. The Rule 59(e) motion argued that the order of dismissal rested on a mistake of fact, namely, that opposing counsel had notified Martinez of the January 20 deadline for disclosures in the district court's order. The Rule 60(b)(1) motion submitted that Martinez's neglect was excusable, given the late date at which she actually became aware of the deadline for producing the Rule 26(a) disclosures. The court took her request for reinstatement under advisement on March 2, 2006. In so doing, Judge Zagel informed LaPonte that "the only conditions under which I would conceivably think of reinstating the case include the payment of the fees and costs attendant to the wheel spinning that the lawyers for the defense had to do in this case, and also upon your client's retention of an additional lawyer other than yourself." The accompanying minute order further specified that "[p]laintiff's request for reinstatement is taken under advisement upon the terms and conditions stated in open court. Costs estimates by defendants to plaintiff due by 3/7/2006. Plaintiff's response to defendants due 3/14/2006."

Even with the fate of the dismissal in the balance, LaPonte's compliance with the conditions imposed by the court was slipshod. He did not satisfy either of the conditions within the time schedule set by the judge. As of the April 27, 2006, status conference, the parties were still squabbling over Martinez's payment of the monetary portion of the court's order. (LaPonte never paid the City's costs, only its fees.) The second attorney, Ronald Belmonte, did not enter an appearance for Martinez until April 13, 2006, and, at that time, he still had not been admitted to practice before the Northern District of Illinois or been admitted *pro hac vice*. Finally, although the court set a briefing schedule for the motions to vacate the judgment,

and the City's response was filed on May 11, Martinez failed to respond by the status hearing on June 6, 2006. At that hearing, LaPonte claimed not to have received the City's brief.

The district court denied Martinez's motion to reconsider on July 6, 2006, declaring in open court that "So I have reconsidered the motion to dismiss that I previously made and in that sense I granted the motion to reconsider. And having reconsidered, I adhere to my ruling because I find as a matter of fact in this Rule 60 hearing the neglect which led to this time was not excusable." The court explained,

> Plaintiff's counsel's conduct in prosecuting this case constitutes inexcusable neglect. Counsel's inability to meet court-imposed deadlines, even after the second dismissal for want of prosecution, was not mere inattentiveness. There is no reasonable excuse for counsel's neglect of this case, and the delays imposed costs not only on his client but on the parties named as defendants.

To this end, the court noted Martinez's (1) failure to respond to the initial motion to dismiss by the due date, without requesting an extension; (2) failure to respond to a second motion to dismiss with anything other than the second amended complaint, which was not a timely response; (3) multiple failures to appear in court; and, perhaps most importantly, (4) dilatory behavior after the case was already on its deathbed—after it had been dismissed a second time—in failing to comply with the schedule set by the court for paying fees and finding additional counsel. The following day, July 7, 2006, a separate entry was made in the docket on form AO 450, which is used for Rule 58 judgments in civil cases: "IT IS HEREBY ORDERED AND ADJUDGED that this case is dismissed for want of prosecution with prejudice. Plaintiff takes nothing from the defendants."

On July 20, 2006, Martinez filed a second motion under Rule 59(e), asking the court to reconsider its order of July 6 dismissing the case, and arguing that La Ponte had complied with the conditions set by the court on March 2, 2006. (This motion was never docketed.) On August 15, 2006, Martinez filed a supplement to her Motion to Reconsider, purporting to introduce newly discovered evidence in the form of a note from co-counsel Macchitelli to LaPonte detailing a phone conversation with counsel for the City. The district court denied the Rule 59(e) motion as time-barred on September 14, 2006, and further noted that if it were to have considered the merits, it would still have denied the motion.

## II

Although both parties agree that this court has appellate jurisdiction over at least some of the orders entered by the district court, that fact does not relieve this court of the responsibility of ensuring that jurisdiction exists. Moreover, there is a dispute over which orders are properly before us, of the three that Martinez listed in the Notice of Appeal. Under FED. R. APP. P. 4(a)(1)(A), a Notice of Appeal must be filed within 30 days of the entry of judgment. The time to appeal can be tolled either by a motion "to alter or amend the judgment under Rule 59," which must be made within 10 days under Rule 59(e), or by a motion "for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered." FED. R. APP. P. 4(a)(4)(A)(iv), (vi). "Once the Rule 59(e) [or timely Rule 60] motion has been ruled on, the thirty-day appeal clock begins to run." *Andrews v. E.I. du Pont Nemours & Co.*, 447 F.3d 510, 515 (7th Cir. 2006) (citation omitted). In this case, Martinez did not file her Notice of Appeal until October 11. In it, she identified "the order that dismissed the Plaintiff's case for want of prosecution and entered in

this case on February 9, 2006 and the subsequent denials of Plaintiff's Motion to Reconsider on July 6, 2006 and September 14, 2006." Of these three orders, the only one that was entered on the docket within the 30-day period prior to the filing of the notice of appeal was the final September 14 order denying the second motion to reconsider. As a result, unless the time to appeal the prior orders was tolled for some reason, the only order we may examine is that of September 14.

The City argues that the time to appeal the initial motion to vacate and the underlying dismissal had expired by October 11, when Martinez filed her notice of appeal. This conclusion, the City claims, follows from *Borrero v. City of Chicago*, 456 F.3d 698 (7th Cir. 2006). In *Borrero*, the district court dismissed the plaintiff's suit on May 9 for failure to prosecute, but it did not enter the judgment on a separate document as required by FED. R. CIV. P. 58 until June 10. Following the dismissal, plaintiff filed three motions. First, on June 8, plaintiff filed a motion to vacate the dismissal; that motion was denied the same day and the denial was docketed on June 10. Second, on June 9, the plaintiff filed a motion asking the court to reconsider its denial of the June 8 motion to vacate; the second motion was denied on June 16 and docketed the same day. Third, the plaintiff filed a second motion to reconsider the motion to vacate the dismissal on June 22; the third motion was denied on July 14 and docketed the next day. The plaintiff filed a notice of appeal on August 10, identifying all three orders; the notice came more than 30 days after the denial of all but his final motion.

It has long been established that "[a] party may not continue to file Rule 59(e) motions in order to forestall the time for appealing; only the first motion stops the clock." *Andrews*, 447 F.3d at 515. This is true for any combination of Rule 59 and 60 motions. See *Borrero*, 456 F.3d at 701 ("[A] litigant should no more be able to extend the time

for appealing from the final judgment indefinitely by filing successive Rule 60(b) motions, or for that matter by filing an alternating sequence of Rule 59(e) and 60(b) motions, than to do so by filing just a succession of Rule 59(e) motions."). *Borrero* reasoned that this rule applies even if the first Rule 59 (or 60) motion preceded the entry of a Rule 58 judgment. The key is whether the Rule 59 motion followed a final judgment, not how the finality of the judgment is demonstrated. *Id.* at 699. Once there is a final judgment, the filing of a second or subsequent Rule 59 motion does not toll the time to appeal. As we reasoned in *Borrero*:

> The appellate rules provide a safe harbor for litigants uncertain whether a judgment that is not entered on a separate document as required by Rule 58 really is a final, appealable judgment. The plaintiff in our case took advantage of the safe harbor by filing his first Rule 59(e) motion more than 10 days after the judgment was rendered (May 9) but fewer than 10 days after the Rule 58 judgment order was docketed (June 10). He was protected because, as we noted earlier, a premature Rule 59(e) motion is timely. There is no reason to allow him to file a second identical motion and get more time to appeal just because his first motion was premature. He should not be rewarded for prematurity.

*Id.* at 701.

For the City's theory to prevail, the February 9 dismissal must have been a final judgment (for which the Rule 58 judgment was not entered until July 7). On February 9, Judge Zagel declared, "The case is dismissed for want of prosecution. Thank you." He followed this oral pronouncement with a minute entry on February 20 that said: "Status hearing held on 2/9/2006. This case is dismissed for want of prosecution. Civil case terminated." We con-

clude that this was a final judgment, even though it was not memorialized as it should have been under Rule 58.

Suppose, for example, that Martinez had appealed the February 9 order directly to this court. Had she filed a Notice of Appeal within 30 days of February 20 (see Rule 58(b), using the date of entry in the civil docket as the point of reference), we would have undoubtedly found that appellate jurisdiction attached. Although the absence of a Rule 58 judgment extends the time for appeal, see FED. R. CIV. P. 58(b), a Rule 58 judgment is not necessary for this court to have appellate jurisdiction. FED. R. APP. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a)(1) does not affect the validity of an appeal from that judgment or order."). "The losing party can appeal a judgment . . . before the entry of the Rule 58 judgment order if though not embodied in the separate document that Rule 58 requires the judgment really is final within the meaning of 28 U.S.C. § 1291." *Borrero*, 456 F.3d at 699. Here, because nothing remained in the district court of the case after the order docketed on February 20, that order was a final judgment for purposes of § 1291.

The only other possible final judgment in this case would be the June 6 order. There, Judge Zagel concluded in response to Martinez's Rule 59/60 motion: "So I have reconsidered the motion to dismiss that I previously made and in that sense I granted the motion to reconsider. And having reconsidered, I adhere to my ruling because I find as a matter of fact in this Rule 60 hearing the neglect which led to this time was not excusable." The language of the ruling shows that it is a denial of the motion to vacate the dismissal. The judgment remained exactly the same— the case remained dismissed for failure to prosecute. Had the court decided that a fresh look at the case was warranted and entered "an order that changes matters of

substance, or resolves a genuine ambiguity in a judgment previously rendered . . . we [would] construe the order as a new judgment in the case, and the aggrieved party [would have] a new ten-day period within which to file another Rule 59(e) motion." See *Andrews*, 447 F.3d at 516 (citation omitted). The test, developed in *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206 (1952), is "whether the district court disturbed or revised legal rights settled in the original . . . order." *Andrews*, 447 F.3d at 516. Here, *nothing* in the original order was revised, and as a result, no new time for appeal arose.

Recognizing the February 20 order as the final judgment in this case, we return to Martinez's motions. On February 23, she filed a motion under both Rule 59(e) and Rule 60. We have no jurisdiction over this motion, insofar as it was based on Rule 59(e). "[T]he denial of a timely Rule 59(e) motion is not appealable separately from the judgment that it seeks to alter or amend." *Borerro*, 456 F.3d at 700. This is because "[t]he two orders—the judgment and the denial of the motion to change it—merge," such that even where the appellant fails to mention the underlying judgment in her notice of appeal, it is nonetheless properly before the court of appeals. *Id*. The last day to appeal those two orders was July 7, 2006, and plaintiff's Notice of Appeal was not filed until October 11, 2006.

Insofar as the motion rested on Rule 60(b) and claimed excusable neglect, the jurisdictional analysis is different. The court denied that motion on July 6, 2006, and entered its Rule 58 final judgment on July 7. Within ten business days of that date, see FED. R. CIV. P. 6(a), Martinez filed a motion to reconsider, challenging the district court's conclusion that she had not shown excusable neglect. In contrast to the merger of a Rule 59(e) motion with the underlying judgment, a "Rule 60(b) motion may be separately considered on appeal, which is to say that the

district court's denial of that motion pending the underlying appeal was itself separately appealable." *Goffman v. Gross*, 59 F.3d 668, 673 (7th Cir. 1995) (citations omitted). Moreover, a party who does not prevail on a Rule 60(b) motion "may challenge that judgment with a motion to alter or amend under Rule 59(e)." *Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225, 1232 (7th Cir. 1983); see also *Berwick Grain Co., Inc. v. Illinois Dept. of Agriculture*, 189 F.3d 556, 558 (7th Cir. 1999). (Nothing in the recent changes to FED. R. APP. P. 4 allowing a Rule 60 motion filed within ten days to toll the time for appeal appears to change or conflict with *Inryco*.)

The Rule 59(e) motion filed on July 20 encompassed within it the Rule 60 motion (and only the Rule 60 motion) that it sought to revisit. "The Rule 59(e) motion challenges only the Rule 60(b) judgment, not the validity of the underlying judgment"; as a result, "[a]n appeal following a ruling on the Rule 59(e) motion also does not bring the underlying judgment up for review." *Inryco*, 708 F.2d at 1232 (internal citation omitted). The court did not rule on the July 20 motion until September 14, 2006, and Martinez's Notice of Appeal was filed within 30 days of that date. We thus have jurisdiction over the court's ruling on her Rule 60(b) motion.

### III

When all is said and done, very little is properly before us, and we can dispose of that readily. The district court has great discretion over Rule 60 motions and the determination whether counsel has shown excusable neglect. See *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). Our review is for abuse of discretion. See *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir. 1995).

We acknowledge that "dismissal for failure to prosecute is 'a harsh sanction which should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable.'" *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 425 (7th Cir. 1998) (quoting *Pyramid Energy Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir. 1989) (citations omitted)). Even giving Martinez the benefit of every doubt, however, she cannot demonstrate that the district court abused its discretion in finding that such a clear pattern of delay existed here.

Contrary to Martinez's representations in her briefs, the reason the district court denied the Rule 60 motion was the pattern of delay and noncompliance with court orders that developed from the time the case was filed; the court was not harping about a single missed deadline. As our earlier discussion shows, the court was well within its rights to view LaPonte and Martinez's conduct this way. Much of the unsatisfactory performance occurred after the district court put Martinez and her lawyer on notice that their failure to comply would result in dismissal. (And the district court gave ample notice here; once again, as our earlier account of the course of this litigation shows, Martinez can hardly claim that she was sandbagged by the court.)

LaPonte tried to justify some of his actions by his alleged lack of knowledge of the content of the court's January 5 order prior to February 2. But he has no one but himself to blame for that. "[A]ttorneys are expected to exercise diligence in monitoring the disposition of their cases." *DeRango v. United States*, 864 F.2d 520, 523 (7th Cir. 1988). LaPonte did not to show up for the January 5 hearing and he did not inquire directly with the court about what happened at the hearing he had missed. LaPonte's efforts in checking the electronic docket and calling opposing counsel do not reflect sufficient diligence

to overcome his failings. *Cf. Grun*, 163 F.3d at 417-18, 422-24 (reversing dismissal for failure to prosecute where counsel had "filed a change of address form and sent copies to defense counsel," "periodically check[ed] the district court file for trial dates," "personally reviewed the file and could not locate any order setting the case for trial or dismissing the case," and "telephon[ed] the district court's clerk on or about May 19, 1994 to inquire about a trial date. The clerk informed her that the case had not 'come through yet' for trial, and that counsel would be notified when the trial was set").

To make matters worse, LaPonte did not comply with the conditions set forth by the district court in order for the motion to vacate to be considered. Courts have discretion to set such conditions on Rule 60(b) motions because the motions are equitable in nature. See 11 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, FED. PRAC. & PROC. § 2857 (2d ed. 1995). The court here set some ground rules, and LaPonte disregarded them. He failed to pay the costs requested by the City and officers, and he did not secure a second lawyer in a timely fashion. The lawyer he finally presented had not been admitted to practice before the Northern District of Illinois. At that late date, LaPonte caused another squabble when he missed a briefing deadline, claiming not to have received the defendant's brief. The onus by then was on Martinez (and LaPonte) to demonstrate that Martinez merited the exercise of the court's equitable discretion to reinstate the case. The court quite reasonably decided that she did not.

It is unfortunate for Martinez that her attorney's neglect resulted in the dismissal of what may have been a meritorious action. The result here may seem harsh, but when a lawyer's inattentiveness becomes as serious as it was here, it imposes costs on everyone: the client, the opponent, and the court system. LaPonte was Martinez's agent,

and Martinez is thus bound by his actions. See *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004). The proper remedy, if she is to have one at all, is a malpractice action against the attorney. See *Tango Music, L.L.C. v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003).

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*