NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted September 19, 2012[*]
Decided September 20, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1538

| | |
|---|---|
| CECIL O. SHAW, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 06 C 5906 |
| WAYNE GERMAIN, et al., *Defendants-Appellees.* | George M. Marovich, *Judge.* |

## O R D E R

Cecil Shaw was sent to prison for attempting to hijack a vehicle. The paperwork delivered by the state court to the Illinois Department of Corrections incorrectly described Shaw's crime as a Class X felony, when instead the offense was a Class 1 felony. Shaw suspected a mistake and alerted prison administrators, but the discrepancy was not

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

resolved. The error did not affect Shaw's initial term of incarceration, but when he was released from prison in December 2002, he was placed on three years of mandatory supervised release, not two years, because a Class X felony carries the longer term. Shaw was arrested in June 2004 for stealing a car. His release was revoked, he was sent back to prison, and in June 2005 he received a new, six-year prison term for auto theft. By then the state court had caught its mistake concerning Shaw's earlier felony, and although his imprisonment for violating his supervised release would have ended before his sentencing for the auto theft if the error had been corrected sooner, he received credit against his new sentence for the entire period after his arrest in June 2004. In effect, then, Shaw served no additional time for violating his supervised release, and thus the misclassification of his 2000 crime as a Class X felony did not harm him. Nonetheless, Shaw sued four DOC employees under 42 U.S.C. § 1983, claiming that they had violated his rights under the Eighth Amendment by not correcting the error in the documents originally received from the state court. In this appeal Shaw seeks to challenge the district court's grant of summary judgment for the defendants. That decision is unassailable—Shaw's lawsuit is frivolous—but our jurisdiction does not extend to the merits of that ruling.

The scope of our review turns on the characterization of Shaw's postjudgment motions. The district court entered judgment for the defendants in September 2010, but instead of filing a notice of appeal, Shaw filed a motion for reconsideration, which cites Federal Rule of Civil Procedure 59(e). But that submission was not received by the court until December 2010. Shaw attached two different certificates of service: The first attests that he had placed the document in his prison's "institutional mail" 23 days after entry of judgment, but the second certificate states that his December motion had been placed in the institutional mail a few days before it was received by the court. Looking to the second certificate, the district court concluded that the motion was untimely under Rule 59(e) because Shaw had mailed it more than 28 days after the judgment. In its January 2011 ruling the court also considered whether Shaw might be entitled to relief under Federal Rule of Civil Procedure 60(b), *see Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 665 (7th Cir. 2012), but decided that he was not because his postjudgment motion raises only arguments that he could have made on appeal.

Three weeks later, near the end of January, Shaw filed a second postjudgment motion. This time he cited Rule 60(b), but his submission challenged the denial of the postjudgment motion received by the district court in December, not the grant of summary judgment. Shaw principally argued that, under the "mailbox rule," his earlier motion *was* timely as a Rule 59(e) motion because he had placed the *original* of that document in the institutional mail within 28 days of the judgment, though, as he later discovered, it had never been received by the district court. At that point, Shaw continued, he sent a *duplicate*

of his motion, which is what the court received in December with the two certificates of service, one pertaining to the original and the other to the duplicate. In late February the district court denied Shaw's second postjudgment motion. The court again ruled that his earlier motion had not been timely under Rule 59(e). But the court added that the document would have lacked merit even as a Rule 59(e) motion because Shaw had "made arguments that he made or could have made before." Shaw filed a notice of appeal 16 days later on March 7, 2011.

In a prior order we interpreted that notice of appeal as conferring jurisdiction to review only the denial of Shaw's second postjudgment motion, but that understanding was mistaken. We drew that conclusion because Shaw filed his notice of appeal more than 30 days after both the entry of the September 2010 judgment and the denial of his first postjudgment motion in January 2011, *see* FED. R. APP. P. 4(a)(1)(A), and our assessment tracked the parties' belief that Shaw's second motion, like the first, operated under Rule 60(b). We did not consider that the second motion could be a timely Rule 59(e) motion challenging the denial of a Rule 60(b) motion, *see York Grp., Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 401 (7th Cir. 2011); *Berwick Grain Co. v. Ill. Dep't of Agric.*, 189 F.3d 556, 558 (7th Cir. 1999); *Inryco, Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1232 (7th Cir. 1983), and yet that is what happened here. Because the denial of a Rule 59(e) motion and the decision it seeks to alter "merge" on appeal, *Martinez v. City of Chicago*, 499 F.3d 721, 727 (7th Cir. 2007); *Borrero v. City of Chicago*, 456 F.3d 698, 700 (7th Cir. 2006), we *do* have jurisdiction to review the denial of Shaw's first postjudgment motion if that motion initiated a separate proceeding under Rule 60(b).

But this outcome cannot benefit Shaw. His first motion, if deemed to be one under Rule 60(b), was properly denied because it raises arguments that he could have made on appeal. *See Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 743 (7th Cir. 2009); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800–01 (7th Cir. 2000). And if the motion actually is a timely Rule 59(e) motion, as Shaw insists, then we do *not* have jurisdiction to review either the denial of that motion or the underlying judgment because the district court ruled on the motion in January 2011 but Shaw did not file a notice of appeal until more than two months later on March 7. A Rule 59(e) motion is not separately appealable from the underlying judgment. *Martinez*, 499 F.3d at 726–27. A timely Rule 59(e) motion does suspend the period to appeal that judgment until the motion is decided, FED. R. APP. P. 4(a)(4)(A)(iv), but Shaw's period to appeal was 30 days and only his first motion (if we decided that both were Rule 59(e) motions) could toll the deadline, *see Borrero*, 456 F.3d at 700; *Charles v. Daley*, 799 F.2d 343, 347–48 (7th Cir. 1986).

But even if we had jurisdiction to review the grant of summary judgment for the defendants, we would not reverse. As we said at the outset, Shaw's lawsuit is frivolous. The defendants all worked for the Department of Corrections, and none of them had authority to amend a sentencing order issued by an Illinois court, *see* 730 ILCS 5/5-4-1(e), 5/3-8-1; *Evans v. Illinois*, 55 Ill. Ct. Cl. 395, 2002 WL 32705308, at *2–3 (Ill. Ct. Cl. 2002). Shaw should have sought relief from the state court. That reason alone defeats his suit, but the defendants also submitted evidence showing that they and other prison employees *had* contacted the state court and prosecutor's office on Shaw's behalf to verify the information they were provided. Those actions, which exceeded the defendants' responsibilities, would defeat any argument that they were deliberately indifferent to Shaw's complaint that he was at risk of being incarcerated beyond the term of his sentence. *See, e.g., Rosario v. Brawn*, 670 F.3d 816, 821–22 (7th Cir. 2012). Finally, even if the error in the court's paperwork had been corrected before Shaw was incarcerated longer for violating his supervised release than he should have been, his total incarceration would have been the same. *See Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006) (explaining that Eighth Amendment claim requires plaintiff to be incarcerated longer than he should have been); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) (same). As we have said, the extra time that Shaw served because of the misclassification of his 2000 crime was credited against his six-year sentence for committing yet another crime.

AFFIRMED.